**Estelle DENTON, Appellant**

v.

**MERIT SYSTEMS PROTECTION BOARD.**

No. 84–5679.

United States Court of Appeals, District of Columbia Circuit.

Argued May 15, 1985.

Decided July 26, 1985.

John D. Grad, Alexandria, Va., for appellant.

Robert C. Seldon, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MIKVA, BORK and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge.

This appeal is taken by a former federal civil service employee from the District Court's denial of her motion to remand proceedings to the Merit Systems Protection Board (MSPB or Board) for reconsideration in light of new evidence. For the reasons that follow, we conclude that we lack jurisdiction over the appeal and that jurisdiction lies in the United States Court of Appeals for the Federal Circuit. We therefore transfer the case to that court in the interest of justice pursuant to 28 U.S.C. § 1631 (1982).

In 1972, Estelle Denton, an employee at the Small Business Administration (SBA), was diagnosed as suffering from a severe emotional disorder. Her ensuing application for disability retirement was granted and she thereupon left federal employment. In the mid-1970's, Ms. Denton came to believe that her 1972 retirement had not been voluntary but, to the contrary, had been coerced by certain fellow employees who were under federal criminal investigation and who, in her view, wished to get rid of her under circumstances that would undermine her credibility with law enforcement officials. However, Ms. Denton did nothing about her suspicions for some years. Then, beginning in March 1981, she engaged in correspondence with her then-United States Senator with respect to her retirement from SBA almost a decade before. In May 1982, as a result of her communications with the Senator's office, Ms. Denton initiated contact with the MSPB. Her administrative appeal and request for hearing were formally filed with the Board on June 3, 1982. The gravamen of her complaint was that her retirement in 1972 had been improperly coerced.

In October 1982, the MSPB's presiding official dismissed Ms. Denton's appeal as untimely. Ms. Denton thereupon filed a request to reopen with the MSPB in November 1982, which was denied. On November 15, 1982, she filed a petition for review in the United States District Court for the District of Columbia. She later filed another petition for review—"out of

an abundance of caution"—in the United States Court of Appeals for the Federal Circuit by virtue of her uncertainty as to which court was the proper forum in light of the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111 (1978) (codified as amended in scattered sections of 5 U.S.C. (1982)), and the subsequently enacted Federal Courts Improvement Act (FICA), Pub.L. No. 97–164, 96 Stat. 25 (1982). *See* J.A. 82. However, the United States Attorney's Office thereafter advised Ms. Denton as follows:

> [I]t is our position that this action was properly filed in the United States Court for the District of Columbia. Thus, we will not argue before the District Court that this case should have been filed in the Court of Appeals for the Federal Circuit. When you dismiss your petition now pending before the Federal Circuit, please send a copy of the dismissal papers to [us].

Accordingly, Ms. Denton voluntarily dismissed her petition in the Federal Circuit and proceeded with her action in federal district court.

In May 1983, Ms. Denton filed a motion in District Court to remand the case to the MSPB for reconsideration in light of "new and material evidence." The District Court denied the motion in February 1984. The MSPB subsequently moved for affirmance of its decision dismissing Ms. Denton's appeal. By order filed August 23, 1984, the District Court granted the Board's motion and dismissed Ms. Denton's case with prejudice. This appeal followed.

At the outset, it is incumbent upon us to determine whether we in fact have subject matter jurisdiction over this appeal. Though the parties have not raised the question, reflecting of course their agreement that jurisdiction properly lies in this court, we are obviously under a duty to make that determination *sua sponte. See Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976); *Louisville & Nashville Ry. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). Our

analysis begins with the Federal Courts Improvement Act, which created the United States Court of Appeals for the Federal Circuit. *See generally Van Drasek v. Lehman,* 762 F.2d 1065 (D.C.Cir.1985).

That statute, which was enacted in 1982, vests in the United States Court of Appeals for the Federal Circuit *"exclusive* jurisdiction ... of an appeal from a final order or final decision of the Merit Systems Protection Board...." 28 U.S.C. § 1295(a)(9) (1982) (emphasis added). The effective date of the FCIA was October 1, 1982. Pub.L. No. 97–164, § 402, 96 Stat. 25, 57 (1982). Thus, any appeal from the MSPB after that date would lie exclusively in the new Federal Circuit. Here, Ms. Denton filed her petition for review from the MSPB's adverse decision in mid-November 1982, which was of course after the FCIA's effective date; in consequence, under the express terms of the FCIA, her appeal should have been filed in the Court of Appeals for the Federal Circuit, not in United States District Court.

The reason that Ms. Denton, with the Government's full agreement, took the unlikely course of repairing to federal district court for a post-FCIA review of a post-FCIA MSPB decision is found in the organic statute creating the MSPB in the first instance, namely the watershed Civil Service Reform Act of 1978, which became effective January 11, 1979, Pub.L. No. 95–454, § 907, 92 Stat. 1111, 1226 (1978). That statute fundamentally altered the system for judicial review of federal civil service decisions. Whereas review of decisions of the old Civil Service Commission previously could be had in the United States Court of Claims or an appropriate federal district court, the CSRA stripped the United States District Courts of jurisdiction over such appeals. In the CSRA's wake, jurisdiction to review MSPB decisions lay either in the Court of Claims, as before, or in the several United States Court of Appeals.

Now this structure, standing alone, would have left no room for federal district court review of MSPB decisions. But, as the final piece of this jurisdictional puzzle,

a savings clause was included within the CSRA that made this new regime of judicial review inapplicable to "any administrative proceeding pending at the time [the CSRA] takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act had not been enacted." Pub.L. No. 95–454, § 902(b), 92 Stat. 1111, 1224 (1978). The MSPB then promulgated the following regulation implementing the savings clause:

> No provision of the Civil Service Reform Act shall be applied by the Board in such a way as to affect any administrative proceeding pending at the effective date of such provision. "Pending" is considered to encompass existing agency proceedings, and appeals before the Board or its predecessor agencies, that were subject to judicial review or under judicial review on January 11, 1979, the date on which the Act became effective. An agency proceeding is considered to exist once the employee has received notice of the proposed action.

5 C.F.R. § 1201.191(b) (1981).

The MSPB's regulation was upheld by this court in the face of a pre-FCIA judicial challenge in *Kyle v. Interstate Commerce Commission,* 609 F.2d 540 (D.C.Cir.1980). In that case, three federal employees came directly to this court, rather than federal district court, challenging the MSPB's upholding of adverse personnel actions taken by the ICC (in two cases) and by the then–HEW in a third case. Each of the three cases involved an employee who had received notice of the proposed personnel action from his respective agency prior to the CSRA's effective date, but whose appeal before the MSPB was not decided until after that date. Reviewing the MSPB's regulation construing the savings clause, the *Kyle* court observed that "each [employee's] proceeding was pending when the [CSRA] became effective, and must therefore be reviewed judicially under prior [pre-CSRA] law, which did not permit review in a Court of Appeals." 609 F.2d at 542.

Now to bring all this home: it was the CSRA's savings clause, as construed by the

MSPB's regulation and this court's decision in *Kyle,* which led the parties in our case to conclude that judicial review of the MSPB's decision could not, as in *Kyle,* be had in the first instance in a Court of Appeals, but must instead be brought in a federal district court. The reasoning was, apparently, that Ms. Denton's administrative proceeding must be deemed to have been "pending" before her employing agency prior to the CSRA's effective date of November 1979.

We cannot agree. This interpretation takes the term "pending" beyond any reasonable meaning. As of November 1979, when the CSRA, complete with savings clause, went into effect, nothing whatsoever was pending before the SBA or the old Civil Service Commission with respect to Ms. Denton's 1972 retirement. Indeed, unlike the situation in *Kyle* where specific agency action was taken *against* the three employees (removal from a position in two instances and removal to a lower grade position in the third instance), here all that happened from the employing agency's standpoint was that Ms. Denton applied for retirement in 1972, a request that was granted lock, stock and barrel. Thus matters stood, with Ms. Denton from all appearances happily drawing retirement pay and life at the agency going on, until years later when in the spring of 1982 Ms. Denton filed her complaint with the MSPB. Until that time, Ms. Denton had taken no steps to bring her complaint of coerced retirement to the SBA, the Civil Service Commission or the MSPB. To the contrary, her sole recourse was outside the Executive Branch entirely, repairing to Capitol Hill to the good offices of her United States Senator.

Under these circumstances, we despair of finding any sort of "pending" proceeding back in 1979, save in some metaphysical sense that a complaint was all the while there, lying inchoate, as it were, awaiting the moment when it would spring to life and relate back to 1972. Not only is this mental gymnastic a bit daunting, but what is more this lavishly expansive interpretation of a savings clause that took effect now almost six years ago creates substantial tension with what Congress set out more recently to do in the FCIA. For there, Congress saw fit to strip the several Courts of Appeals of jurisdiction over MSPB matters, just as the 95th Congress had divested the federal district courts of jurisdiction (save for the savings clause) back in 1979 in enacting the CSRA; since October 1982, as we have seen, post-FCIA decisions of the MSPB are appealable only to the Court of Appeals for the Federal Circuit. It is to that specialized forum which Congress determined to channel MSPB decisions rendered after the effective date of the FCIA. Under the parties' jurisdictional view, however, there is no end in sight to federal district court jurisdiction over agency personnel actions so long as employees seek to challenge an agency action taken prior to the CSRA's effective date. This would be, when all is said and done, a rewriting of the savings clause, at great cost to the orderly administration of justice which Congress sought to effectuate in the FCIA. That is to say that the savings clause language, "any administrative proceeding pending," would otherwise be twisted to mean, "any agency action taken prior to the CSRA's effective date, regardless of when that action was first challenged by the employee."

We are, in sum, unable to conclude that Congress intended the CSRA's savings clause to continue to reach so powerfully back in time and then to project forward into the post-FCIA era all those matters lying fallow for lo these many years in the vast apparatus of the Executive Branch and deposit them at the doorsteps of all ninety-four federal judicial districts from the Virgin Islands to Guam. A gentle paraphrase of Chief Justice John Marshall's statement springs to mind: this proposition is simply too extravagant to be seriously maintained.

In the interest of justice, the case is transferred to the Court of Appeals for the Federal Circuit.

*It is so ordered.*