**Fran HISLER, Plaintiff,**

v.

**GALLAUDET UNIVERSITY, Defendant.**

**Civil Action No. 99–2387(RMU).**

United States District Court, District of Columbia.

Oct. 21, 2004.

would contravene the Supreme Court's ruling in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

Denise Marie Clark, Hotel Employees & Restaurant Employees International Union, Aurora, IL, Michael J. Beattie, Beattie & Associates, PLLC, Fairfax, VA, Mindy Gae Farber, Farber Taylor, LLC, Rockville, MD, Terence George Craig, Feder Semo Clark & Bard, Joseph Semo, Feder Semo & Bard, P.C., Washington, DC, for Plaintiff.

Andrew J. Marcus, Christopher E. Hassell, Bonner Kiernan Trebach & Crociata, Washington, DC, for Defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF COUNT I AND MOTION TO DISMISS COUNT III

### I. INTRODUCTION

The plaintiff, Fran Hisler, brings this three-count complaint against her former employer, Gallaudet University. The plaintiff alleges in count I that the defendant acted in violation of both the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C §§ 12101–12213, and the Rehabilitation Act, as amended, 29 U.S.C. §§ 701–796i, by improperly terminating her employment and failing to accommodate her disability. In count II, the plaintiff claims that the defendant failed to notify her of her rights under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") pursuant to 29 U.S.C. § 1166(a)(1). The plaintiff alleges in count III that the defendant did not grant her appropriate pension credits towards her Civil Service Retirement System ("CSRS") retirement benefits.

This matter comes before the court on the plaintiff's partial motion for summary judgment, specifically requesting that the court stay count I or, in the alternative, dismiss count I without prejudice, and further requesting summary judgment on count III ("Pl.'s Mot."), as well as the defendant's cross-motion for summary judgment as to count I and the defendant's motion to dismiss count III ("Def.'s Mot."). After a careful review of the submissions of both parties, the court, pursuant to its discretionary powers, grants the plaintiff's voluntary dismissal of count I, contingent on her acceptance of the terms and conditions that the court imposes in its discretion. FED.R.CIV.P. 41(a)(2). The court grants the defendant's motion to dismiss for lack of subject matter jurisdiction on count III. Finally, by request of the parties, the court dismisses count II with prejudice. Pl.'s Mot. at 13; Def.'s Opp'n at 2 n. 1.

### II. BACKGROUND

#### A. Factual Background

From July 1983 to September 1986, the defendant, a government corporation that receives financial support from the federal government, employed the plaintiff as an occupational therapist at Kendall Demonstration Elementary School. Am. Compl. ¶¶ 6–8; Pl.'s Mot. at 2; Def.'s Mot. at 1; Def.'s Mot. Ex. 1 at 2–3.[1] Federal policies govern the administration of certain employment rights and benefits for the defendant's employees. *Id.*

In June of 1986, upon exposure to the Epstein–Barr virus during the course of her employment at Kendall School, the plaintiff was diagnosed with Chronic Fatigue Immune Dysfunction Syndrome ("CFIDS"). Am. Compl. ¶ 8; Def.'s Mot. at 2. Subsequently, due to her medical condition, the plaintiff applied for and received benefits under the Federal Employees Compensation Act ("FECA") from the Office of Workers' Compensation Programs ("OWCP") of the Department of Labor, for approximately ten years. Def.'s Mot. Ex. 1 at 2. The plaintiff's OWCP benefits ceased shortly after the defendant, in 1995, contracted with a private insurance company for its workers' compensation benefits, thereby ending its par-

---

1. The defendant adopts the facts as written from the initial decision by the Merit System Protection Board ("MSPB") on September 6, 2001. Def.'s Mot. for Summ. J. of Count I and to Dismiss Count III ("Def.'s Mot.") at 2 n. 1.

ticipation in programs authorized by FECA, including OWCP. Pl.'s Mot. at 3; Def.'s Mot. Ex. 1 at 2. Consequently, the plaintiff's eligibility under FECA and her OWCP benefits terminated. *Id.* The plaintiff received further compensation from the defendant's private insurer from May 5, 1996 through January 18, 1998. *Id.*

During the approximate twelve-year period, 1986 through 1998, that the plaintiff was receiving workers' compensation benefits from OWCP and later through a private insurer, she also requested that the defendant provide employment accommodations for her disability. Am. Compl. ¶ 10; Def.'s Statement of Material Facts Not in Dispute ("Def.'s Statement") ¶ 1. The plaintiff and the defendant did not agree on the extent to which the plaintiff could work nor on the necessary accommodations. Am. Compl. ¶¶ 10–12; Def.'s Statement ¶¶ 4, 6. Despite the plaintiff's dissatisfaction with the defendant's job offers, on January 18, 1998, the plaintiff made an attempt to return to work as a kiosk attendant for the defendant. Pl.'s Mot. at 3–4; Def.'s Statement ¶ 1. But shortly thereafter, the plaintiff stopped working and went on leave-without-pay due to her illness. Def.'s Mot. Ex. 25; Am. Compl. ¶¶ 14–16. The defendant required the plaintiff to produce medical documentation supporting her claimed inability to work. Def.'s Mot. Ex 25. The defendant claims that the plaintiff abandoned her position, while the plaintiff claims that she was terminated. Am. Compl. ¶¶ 14–16; Def.'s Statement ¶ 6. Nevertheless, subsequent to the parties ending their employment relationship, the plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC"). Am. Compl. ¶ 4. On January 18, 1999, the plaintiff received her "Rights to Sue" letter from the EEOC. *Id.* She then filed suit against the defendant in this court alleging the claims listed in count I of her amended complaint.[2] *Id.*

In the meantime, following the plaintiff's employment termination in 1998, the plaintiff also filed for disability retirement benefits under CSRS. Pl.'s Mot. at 3–4; Def.'s Mot. at 3. There were difficulties with the plaintiff's pension credit calculations from the outset. While initially the defendant agreed to credit the plaintiff's pension for the May 4, 1996 through January 18, 1998 period, the Office of Personnel Management ("OPM") later discovered that the plaintiff had been overpaid because the May 4, 1996 through January 18, 1998 period was incorrectly included in the service credit calculation. Def.'s Mot. Ex. 1 at 3.

The plaintiff requested that OPM reconsider the exclusion of the above period. Def.'s Mot. Ex. 1 at 15. The plaintiff bootstrapped an argument to her request for reconsideration that the defendant erred by not adjusting the calculations with incremental merit raises for her projected salary. *Id.* The OPM affirmed its earlier decision of her overpayment, yet only briefly mentioned the inclusion of merit increases because it considered the issue to be in the defendant's "exclusive purview." Pl.'s Opp'n at 10; Def.'s Mot. Ex. 1 at 15. The plaintiff appealed the OPM decision with the Merit System Protection Board ("MSPB"). *Id.* The MSPB dismissed the appeal but gave the plaintiff the option of requesting a board review of its ruling. Def.'s Mot. Ex. 1 at 19–20.

**2.** The plaintiff's claim in her original complaint, which is claim I of her amended complaint, is that the defendant violated both the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C §§ 12101–12213, and the Rehabilitation Act, as amended, 29 U.S.C. §§ 701–796i, by improperly terminating her employment and failing to accommodate her disability.

The plaintiff accordingly submitted a request to the MSPB, which it dismissed in a "final order" because first, the plaintiff failed to bring forth new, previously unavailable evidence and second, there was no outcome-determinative error in law or regulation. Def.'s Mot. Ex. 2 at 1–2.

At the end of her administrative review rope, the plaintiff still had judicial review at her disposal. MSPB stipulated in its final order that 5 U.S.C. § 7703 vested the plaintiff with a right to appeal the board decision in the United States Court of Appeals for the Federal Circuit. Def.'s Mot. Ex. 2 at 1. Instead of appealing to the Federal Circuit, the plaintiff brought this claim, as count III, to this court along with her ADA, Rehabilitation Act, and COBRA violation claims.

### B. Procedural History

Following the plaintiff's receipt of her "Dismissal and Notice of Rights to Sue" letter from the EEOC, the plaintiff filed the instant suit on September 8, 1999, seeking reinstatement to her former position with appropriate accommodations and damages. Am. Compl. at 1; *Hisler v. Gallaudet Univ.*, 206 F.R.D. 11, 12 (D.D.C. 2002). The original complaint alleged that the defendant acted in violation of both the ADA and the Rehabilitation Act. *Hisler*, at 11, 12. The plaintiff's counsel at the time filed a motion for leave to withdraw from the case, which the court granted in an order dated December 6, 1999. *Id.* On November 15, 1999, the defendant filed its answer to the plaintiff's complaint. *Id.* The plaintiff's new counsel entered an appearance on November 19, 1999, however, on February 9, 2002, the plaintiff's new counsel filed a motion for leave to withdraw from the case, which the court granted. *Id.*

On July 18, 2000, the court issued an order staying and administratively closing the case until the plaintiff secured new representation. *Hisler*, at 11, 12. On November 22, 2000, the defendant filed a motion to dismiss for failure to prosecute. In an order on November 30, 2000, the court directed the plaintiff to show cause by January 8, 2001 as to why the plaintiff's case should not be dismissed for failure to prosecute. The plaintiff filed a timely response on January 8, 2001. The court found the response sufficient and denied the defendant's motion to dismiss. Order dated April 6, 2001, at 2.

On January 10, 2002, the court granted the plaintiff's motion for leave to file an amended complaint and granted the defendant's motion to extend time for discovery. On that same day, the plaintiff filed her amended complaint, adding two claims premised on the defendant's failure to notify her of COBRA rights and the failure to appropriately calculate pension credits. Am. Compl. ¶¶ 2, 18–24. The plaintiff also relied on the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(c)(1)(B) and 29 U.S.C. § 1132(e) to support her contention that this court has subject matter jurisdiction to hear her claims.

The parties actively continued the litigation of the case. Then, on May 5, 2003, the court granted the parties' joint motion to stay proceedings until the conclusion of the mediation process before Magistrate Judge Facciola.

In its March 10, 2004 order, the court struck the parties' dispositive motion submissions and set a revised briefing schedule. The court instructed the parties to submit new briefing that would clarify arguments on the plaintiff's alleged entitlement to merit salary increases and the defendant's alleged failure to make disability annuity payments. Order dated March 10, 2004, at 2. The court further directed the parties to brief the question of subject

matter jurisdiction in light of *Graham v. Ashcroft*, 358 F.3d 931 (D.C.Cir.2004). *Id.*

On April 30, 2004, the plaintiff submitted a motion for partial summary judgment. In her motion, the plaintiff dismisses count II with prejudice; requests that the court either stay count I or, in the alternative, permit the plaintiff to voluntarily dismiss count I without prejudice; and moves for summary judgment on count III. Pl.'s Mot. at 1-2. On May 3, 2004, the defendant filed a cross-motion for summary judgment as to count I and to dismiss count III for lack of subject matter jurisdiction. On May 13, 2004, the defendant filed its opposition to the plaintiff's motion, agreeing to dismiss count II with prejudice, but opposing the plaintiff's motion with regard to counts I and III. Def.'s Opp'n at 2. The next day, the plaintiff filed her opposition to the defendant's motion. On May 19, 2004, both parties timely submitted their replies.

Because the parties have agreed to dismiss count II with prejudice, the court grants the plaintiff's motion, in part, to dismiss count II with prejudice and now addresses the two remaining counts. For the reasons that follow, the court grants each of parties' motions in part. The court denies the plaintiff's motion to stay count I, grants the plaintiff's motion to dismiss count I without prejudice, denies the defendant's motion for summary judgment of count I, grants the defendant's motion to dismiss count III for lack of subject matter jurisdiction, and denies the plaintiffs motion for summary judgment of count III.

## III. ANALYSIS

### A. The Court Denies the Plaintiff's Motion to Stay Count I

The plaintiff requests that the court stay count I proceedings pending the outcome of the two cases in District of Columbia Court of Appeals and the Department of Employment Services, Labor Standards, Office of Worker's Compensation ("DOES"). Pl.'s Mot. at 1. The court, in balancing the equities, concludes that granting a stay would be unfair to the defendants as it would unnecessarily delay this case at this late stage in the litigation.

A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere. *See Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* at 254-55, 57 S.Ct. 163. Indeed, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir.1979).

The Supreme Court has guided that "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [the movant] prays will work damage to some one else." *Landis*, 299 U.S. at 255, 57 S.Ct. 163. Thus, the plaintiff shoulders the burden in demonstrating a "clear case of hardship." *Id.* The plaintiff in the instant case contends that she seeks to avoid adverse legal impact and interference of this claim on related pending cases. But stating a possibility of inconsistencies in rulings on the same issue, without any explanation on how her claim will suffer any harm, does not establish, in itself, a "clear case of hardship." *See, e.g., GFL Advantage Fund, LTD. v. Colkitt*, 216

F.R.D. 189, 193 (D.D.C.2003) (Facciola, Mag. J.).

■ In balancing the equities, the court concludes that a stay would be unfair to the defendant Gallaudet who, after five years of litigation, is finally at the second round of dispositive motions.[3] *See Landis*, 299 U.S. at 255, 57 S.Ct. 163 (stating that a court, in deciding a motion to stay, must exercise judgment that "weigh[s] competing interests and maintain[s] an even balance") (citations omitted). Furthermore, the plaintiff has failed to show the requisite hardship and the court, accordingly, denies the plaintiff's motion for stay.

### B. The Court Grants the Plaintiff's Motion for Voluntary Dismissal of Count I

■ As an alternative to staying the proceedings on count I, the plaintiff requests that the court allow the plaintiff to voluntarily dismiss count I without prejudice. Contingent on specific conditions set forth by the court below, the court grants the plaintiff's voluntary dismissal of count I without prejudice.

#### 1. Legal Standard for Voluntary Dismissal Under Rule 41

■ Federal Rule of Civil Procedure 41(a) governs voluntary dismissal of an action. FED.R.CIV.P. 41(a)(1). Under Rule 41(a)(1), a plaintiff may dismiss a civil action without an order of the court by filing a notice of dismissal before the adverse party files an answer or motion for summary judgment, or by filing a stipulation of dismissal signed by all parties. *Id.; Swift v. United States*, 318 F.3d 250, 252 (D.C.Cir.2003). Otherwise, under Rule 41(a)(2), "an action shall not be dismissed at the plaintiff's instance save upon order

of the court and upon such terms and conditions as the court deems proper." FED.R.CIV.P. 41(a)(2); *Taragan v. Eli Lilly & Co., Inc.*, 838 F.2d 1337, 1339 (D.C.Cir. 1988). Dismissals under Rule 41(a)(2) "generally [are] granted in the federal courts unless the defendant would suffer prejudice other than the prospect of a second lawsuit or some tactical disadvantage." *Conafay v. Wyeth Labs.*, 793 F.2d 350, 353 (D.C.Cir.1986); *see also* 9 FED. PRAC. & PROC. CIV. 2d § 2364. A court applying Rule 41(a)(2) therefore must consider whether the plaintiff seeks the motion for voluntary dismissal in good faith, and whether the dismissal would cause the defendant "legal prejudice" based on factors such as the defendant's trial preparation efforts, any excessive delay or lack of diligence by the plaintiff in prosecuting the action, an insufficient explanation by the plaintiff for taking nonsuit, and the filing of motions for summary judgment by the defendant. *In re Vitamins Antitrust Litigation*, 198 F.R.D. 296, 304 (D.D.C.2000).

#### 2. The Defendant Will Not Suffer Legal Prejudice Upon Dismissal of Count I without Prejudice

As an initial matter, because the defendant has filed a motion for summary judgment as to count I, Rule 41(a)(1) does not apply. *Robinson v. England*, 216 F.R.D. 17, 18 (D.D.C.2003) (noting that the court applies Rule 41(a)(2) when a defendant has filed an alternative motion for summary judgment and has not stipulated to the dismissal). Accordingly, the court applies Rule 41(a)(2) to the plaintiff's motion for voluntary dismissal.

The court begins its analysis with the issue of whether the plaintiff's voluntary withdrawal is in good faith. *In re Vitamins*, 198 F.R.D. at 305. The plaintiff is

---

**3.** The parties filed dispositive motions prior to those currently pending before the court. The court struck those from the record. Order dated March 10, 2004 at 3.

currently pursuing cases relating to count I of her complaint in two other fora, namely, the District of Columbia Court of Appeals and DOES. Pl.'s Mot. at 1. The plaintiff moves to dismiss count I to avoid costly adjudication in multiple fora and legal inconsistencies and interference between related cases. Pl.'s Mot. at 13. The defendant asserts that the plaintiff's interests in postponing the adjudication of count I are time-consuming and costly. Def.'s Opp'n at 8–9. Be that as it may, although the plaintiff is motivated by self-interest, this fact alone is not indicative of bad faith. As discussed more fully below, the plaintiff has sufficiently persuaded the court that she brings her motion for voluntary dismissal in good faith, or at least not in bad faith.

The issue of good or bad faith alone, however, is not dispositive of the plaintiff's motion. *See In re Vitamins*, 198 F.R.D. at 304. Generally, courts grant voluntary dismissals unless the defendant would suffer legal prejudice other than the prospect of a second lawsuit or some tactical disadvantage. *Conafay*, 793 F.2d at 353. Pursuant to the guidance lent by the D.C. Circuit, the court considers the following factors to determine whether or not legal prejudice exists in the case at hand: the defendant's trial preparation efforts, any excessive delay or lack of diligence by the plaintiff in prosecuting the action, an insufficient explanation by the plaintiff for taking nonsuit, and the filing of motions for summary judgment by the defendant. *Id.* Accordingly, the court addresses each of these factors in turn.

The first factor of prejudice that the court considers is the defendant's trial preparation. On its face, it appears that if the court grants the plaintiff's voluntary dismissal of count I, the defendant's work-product, purchased through expense and diligent effort, would all be for naught. The defendant argues that the trial preparation efforts since the incipience of this case in 1999, are potentially wasted. On second glance, the diligence of the defendant does not necessarily lose all usefulness on dismissal. As stated by both parties, related claims are pending in two additional fora. Pl.'s Mot at 1, 12–13; Def.'s Opp'n at 8–9. It does not tax one's legal imagination to surmise that between related cases, efforts are freely lent from one to the other. *E.g., In re Vitamins*, 198 F.R.D. at 304 (discussing that a party is not entitled to reimbursement for expenses incurred for work-product that is useful in a second suit with repetitious claims) (citations omitted). Moreover, if the plaintiff does choose to refile and relitigate this count, much of the defendant's preparations will likely be useful in a potential second lawsuit.[4] *Id.*

The court is wary of meandering into the forest of speculation by postulating on the usefulness of the defendant's efforts elsewhere. It is enough to note the fact that the defendant "may have incurred substantial expense prior to dismissal does not amount to legal prejudice." *Piedmont Resolution v. Johnston, Rivlin & Foley*, 178 F.R.D. 328, 331–32 (D.D.C.1998) (Attridge, Mag. J.).

The court next considers the second factor of prejudice, the plaintiff's lack of dili-

---

**4.** The plaintiff claims that the statute of limitations will likely run before the plaintiff's other cases conclude and thus before the plaintiff can refile her suit in this court, which protects the defendant from the prejudice of a second lawsuit. Pl.'s Mot. at 13. The court, however, notes that although the passing of the statute of limitations may guard against a second lawsuit, the prospect of a second lawsuit or other tactical disadvantage, in general, does not legally prejudice the nonmovant. *Conafay v. Wyeth Labs.*, 793 F.2d 350, 353 (D.C.Cir.1986); *see also* 9 FED. PRAC. & PROC. CIV. 2d § 2364.

gence or unnecessary delay. The parties would have been better served had the issue of the pending cases been raised at least as early as December 24, 2003, when the plaintiff filed an application for a formal hearing with DOES. The plaintiff neglected to voice her concerns over inconsistent rulings until her dispositive motion on April 30, 2004. But still, although the plaintiff's behavior is far from praiseworthy, the court must look at whether the plaintiff has "demonstrated *excessive* delay and lack of diligence in prosecuting this action as a whole." *In re Vitamins*, 198 F.R.D. at 305 (emphasis added). That she has not. Overall, the plaintiff has complied with orders and her motions have been timely filed. Thus, the plaintiff's delay in asking for voluntary dismissal is not a dispositive factor in showing that she wholly lacks diligence in her prosecution of this case. *Id.* The court, looking at the procedural posture of this case as a whole, concludes that the defendant would not suffer legal prejudice.

The court next turns to the adequacy of the plaintiff's need for dismissal. In prior cases, the court has found insufficient those explanations that served as veiled maneuvers to avoid adverse rulings. *In re Vitamins*, 198 F.R.D. at 305 (citing *Teck Gen. P'ship v. Crown Central Petroleum Corp.*, 28 F.Supp.2d 989 (E.D.Va.1998) (holding that a plaintiff who is unable to meet the scheduling deadlines may not obtain a non-prejudicial voluntary dismissal to avoid an adverse ruling)). Here, the defendant asserts that the plaintiff makes this request to "avoid a substantive adjudication of a groundless claim ..." Def.'s Opp'n at 9. The court concludes that the supposition that the plaintiff's intent is to avoid an adverse ruling is a contortion of legal reality. It will always be the case that a voluntary dismissal avoids an adverse ruling just as much as it avoids a favorable one. Thus, on the present facts,

the plaintiff's motion for voluntary dismissal does not necessarily avoid an adverse ruling on this count because the court has not yet addressed the case on its merits. The defendant assumes optimistically that it will prevail, but the court deems the defendant's self-confidence premature.

The plaintiff posits her need for nonsuit on financial constraints and her desire to avoid legal impact and interference among her claims. Pl.'s Mot. at 12–13. The plaintiff filed her pending suits after count I was initially filed in this court in 1999. Compl. at 1. The plaintiff must have realized at some earlier stage that there was overlap between her multiple claims, which could cause legal inconsistency. Yet, faced with the financial reality of litigating in multiple courts, the plaintiff seeks quickly to jettison this claim for possible later retrieval. Although the gauge for sufficiency is not precise, the court is unconvinced that the plaintiff's explanation is sufficient.

But even when a plaintiff does not present a "compelling reason for dismissal," the court, to avoid legal prejudice, has broad discretion to impose "such terms and conditions as the court deems proper." FED.R.CIV.P. 41(a)(2); *In re Vitamins*, 198 F.R.D. at 305; *Lee County v. United States*, 1988 U.S. Dist. LEXIS 5655, at *11–12 (D.D.C.1994) (noting that "this Circuit has granted district courts considerable discretion in ordering requirements upon dismissal"). That discretion is limited to those conditions that will "alleviate the harm (other than tactical disadvantage) that the defendant will suffer if the motion is granted." *In re Vitamins* 198 F.R.D. at 305 (noting that per *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604–605 (5th Cir.1976), the district court's discretion is limited and that the district court's decision on appeal is held to an abuse of discretion standard on appeal). The court

is mindful that "[t]he purpose of the 'terms and conditions' clause [of Rule 41(a)(2) ] is to protect a defendant from any prejudice or inconvenience that may result from the plaintiff's voluntary dismissal." *Taragan*, 838 F.2d at 1340 (citations omitted) (alteration in original).

To prevent legal prejudice to the defendant, the court conditions the plaintiff's voluntary dismissal on the plaintiff's acceptance of these following conditions. First, the plaintiff may only refile in this court if these pending cases have been resolved and no concurrent litigation on common issues exist in other fora. Furthermore, if the plaintiff should chose to refile, the defendant then has the option of submitting a detailed statement itemizing its costs and fees for work-product in this litigation that cannot be used in the future action. The defendant must produce supporting documentation that includes, but is not limited to, billing statements and times sheets. *See Collins v. Baxter Healthcare Corp.*, 200 F.R.D. 151, 153 (D.D.C.2001) (citations omitted).

The court also notes that the pendency of a summary judgment motion is also a factor the court considers in determining legal prejudice. The defendant has filed a summary judgment motion on count III, which is currently pending. The court has considered that "most denials for voluntary dismissals are justified by the fact that the defendants had already filed motions for summary judgment or that the parties were on the eve of trial." *In re Vitamins*, 198 F.R.D. at 305 (citations omitted). But pendency of "a dispositive motion alone is not grounds for denying the plaintiff's dismissal motion." *Robinson*, 216 F.R.D. at 18 (citations omitted). In fact, "[m]otions for summary judgment filed after the motion for voluntary dismissal are insufficient to support a finding

of prejudice." *Piedmont*, 178 F.R.D. at 331 (citations omitted).

The parties are, however, on the eve of trial, so to speak. The plaintiff filed her motion to dismiss at a late stage in this litigation, that is, more than two years after the deadline for completion of discovery. The defendants have incurred substantial expense prior to this dismissal motion. Although this does not amount to legal prejudice, the court concludes that potential burdens of relitigation are satisfactorily cured by conditioning the plaintiff's dismissal and refiling of the claim on "the payment of costs for work and effort incurred in the first case that would not be of use in the second." *Piedmont*, 178 F.R.D. at 331–32 (internal citations omitted). The court concludes that the defendant will not be legally prejudiced by the plaintiff's motion for voluntary dismissal without prejudice under the terms and conditions already imposed by the court. Accordingly, the plaintiff's voluntary dismissal of count I is granted contingent on her acceptance of these conditions, as set forth above.

### C. The Court Denies the Defendant's Motion for Summary Judgment as to Count I

The court, having dismissed count I without prejudice, subject to conditions, does not reach the issue of the pending summary judgment on this count. Because this issue is moot, the court accordingly denies the defendant's motion for summary judgment as to count I.

### D. The Court Grants the Defendant's Motion to Dismiss Count III for Lack of Subject Matter Jurisdiction

The court next considers the pending motions on count III. In its order dated March 9, 2004, the court instructed the parties to review and brief whether this court has subject matter jurisdiction over count III. Subsequently, the plaintiff

moved for summary judgment on this count and the defendant moved to dismiss the plaintiff's claim on the ground that this court does not have jurisdiction to adjudicate this matter. For the following reasons, the court grants the defendant's motion to dismiss for lack of subject matter jurisdiction.

### 1. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C.Cir.2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C.Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Rasul v. Bush*, 215 F.Supp.2d 55, 61 (D.D.C.2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). The court may dismiss a complaint for lack of subject matter jurisdiction only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Empagran S.A. v. F. Hoffman–LaRoche, Ltd.*, 315 F.3d 338, 343 (D.C.Cir.2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C.Cir.2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13 (D.D.C.2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir. 1986), *vacated on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C.Cir.1992).

### 2. CSRA Precludes Judicial Review of the Plaintiff's Claim in This Court

Following the court's March 9, 2004 order directing the parties to brief the subject matter jurisdiction of this court over count III, the defendant moved to dismiss for lack of subject matter jurisdiction, citing *Graham v. Ashcroft*, 358 F.3d 931, (D.C.Cir.2004). The defendant asserts in its motion that this court does not have subject matter jurisdiction because the Civil Service Reform Act ("CSRA") did not provide for judicial review of disability retirement benefits beyond those of appellate review in the Federal Circuit. Def.'s Mot. at 16. The defendant further contends that the plain language of 5 U.S.C. §§ 1295(a)(9) and 7793(b)(1) gives the Fed-

eral Circuit exclusive jurisdiction over appeals of final MSPB decisions or orders. Def.'s Mot. at 14; 5 U.S.C. § 1295(a)(9); 5 U.S.C. § 7793(b)(1).

The plaintiff, on the other hand, asserts that ERISA, 29 U.S.C. §§ 1132(c)(1)(B) and 1132(e), provide a basis for subject matter jurisdiction. Am. Compl. ¶ 2; Pl.'s Mot. at 7; Pl.'s Reply at 3. Specifically, she avers that "the defendant's conduct as a sponsor of a pension program is subject to review under ERISA." Pl.'s Reply at 3. The court disagrees. The court finds that ERISA does not preempt CSRA in the administration of CSRS.

Congress enacted ERISA, intending "to provide uniform federal regulation of employee retirement benefit plans and to make regulation of benefits an entirely federal concern." *Nat'l Rehab. Hosp. v. Manpower Int'l, Inc.*, 3 F.Supp.2d 1457, 1459 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Although ERISA's preemption power is broad in creating this uniformity, *id.; see* 29 U.S.C. § 1144(a), it stops short when affronted with a "governmental plan." 29 U.S.C. § 1003(b)(1). For the purposes of ERISA, a "governmental plan" is one "established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32).

CSRS falls under ERISA's "governmental plan" exception. Congress, in 1920, "passed the first civil service retirement act, which provided that any eligible employee in the classified civil service could receive an annuity based upon his or her years of federal service and average annual salary." *Am. Postal Workers Union, AFL–CIO v. U.S. Postal Serv.*, 707 F.2d 548, 559–50 (D.C.Cir.1983) (citing Act of May 22, 1920 ch. 195, 41 stat. 614). Through its subsequent amendments in the last eighty years, CSRS remains a governmental plan established or maintained for its employees by the Government of the United States.

Unsatisfied with this plain meaning of the statute, the plaintiff suggests that even if her CSRS benefits are generally exempt from the ERISA coverage, the defendant as a nongovernmental employer is not exempt from ERISA. Pl.'s Reply at 4. The plaintiff's concern over the defendant's governmental status is oblique to the main question. The court points out that an entity may be governmental for one purpose and non-governmental for another. *Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1206 (D.C.Cir.1993). Therefore, the question for this court (for the purposes of the ERISA "governmental plan" exemption) is whether in its employment relationships, the defendant entity functions like a governmental agency. *Id.*

In *Alley,* the court found ERISA applicable because the defendant related to its employees "as would a private business— an entity whose employees are not subject to laws governing public employees generally." *Id.* Those "laws governing public employees" include 5 U.S.C. § 2105 (defines federal "employee" for purposes of title 5), 5 U.S.C. § 5101 (classifies positions for purposes of pay and for use "in all phases of personnel administration"), and 5 U.S.C. §§ 8331 et seq. (outlines civil service retirement benefits). *Id.*

Here, in stark contrast, the defendant's employees' retirement rights are primarily governed as public employees. The defendant's employees, unlike those involved in *Alley,* are subject to personnel rules or restrictions on salaries and benefits im-

posed generally on federal employees.[5] *See id.* Furthermore, for the purposes of CSRS, Congress categorizes the defendant Gallaudet as the "government," 29 U.S.C. 8331(7), and an "employee" as an individual employed by the defendant Gallaudet. 29 U.S.C. 8331(1)(H). In light of these facts, ERISA is inapplicable and jurisdiction for count III in this court is based solely on the auspices of CSRS.

CSRA governs all administrative and judicial remedies for the plaintiff's CSRS claim. In 1978, CSRA overhauled the civil service system and created both the OPM and MSPB. Congress included in OPM's responsibilities the administration of the CSRA. 5 U.S.C. § 8347(a); *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 773–74, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985). Congress also vested MSPB with jurisdiction to review OPM's Retirement Act decisions. 5 U.S.C § 8347(d)(1); *Lindahl*, 470 U.S. at 774, 105 S.Ct. 1620. Moreover, in 1985 the Supreme Court held that MSPB appeals involving disability retirement under the Retirement Act enjoyed judicial review only in the Federal Circuit. *Lindahl*, 470 U.S. 768, 792, 105 S.Ct. 1620, 84 L.Ed.2d 674. In the words of Justice Brennan:

> Title 28 U.S.C. § 1295(a) provides: The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction ... (9) of an appeal from a final order or final decision of the Merit System Protection Board, pursuant to sections 7703(b)(1) and 7703(d) of title 5. Title 5 U.S.C. § 7703(b)(1) in turn provides that, except for discrimination cases covered by subsection (b)(2), a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit. Sections 1295(a)(9) and 7703(b)(1) together appear to provide for exclusive jurisdiction over MSPB decisions in the Federal Circuit, and do not admit any exceptions for disability retirement claims.[6]

*Id.* (emphasis deleted) (internal quotations and footnotes omitted). CSRA's statutory scheme essentially leaves no room for federal district court review of MSPB decisions regarding disability retirement. *Denton v. Merit Sys. Prot. Bd.*, 768 F.2d 422, 424–25 (D.C.Cir.1985).

The plaintiff protests that because the OPM and MSPB have no jurisdiction to review the certification of pay, this court is the proper forum to adjudicate issues related to the administration of an employee benefit plan. Pl.'s Opp'n at 10. The plaintiff points to the MSPB's initial decision on September 6, 2001, where the MSPB held that it had no authority to review the defendant's salary structure and pension credit calculations. Def.'s Mot. Ex. 1 at 17.

Assuming that the OPM and MSPB could do no more for her, the plaintiff still cites no legal support for jurisdiction in this court. Unlike other employees governed by CSRA, the plaintiff had the benefit of judicial review through the Federal Circuit upon receipt of a final order. She received her final order from the MSPB on

---

**5.** Both parties also cite *Becker v. Gallaudet*, 66 F.Supp.2d 16, 19 at n. 4 (D.D.C.1999), noting that though the defendant Gallaudet was not a federal actor in the constitutional claim setting, Congress still exercised "significant control" over the defendant's employment relations, and had extended Civil Service Retirement Act ("CSRA") coverage to the defendant's employees.

**6.** 5 U.S.C. § 7703(b)(2) lists the exceptions to judicial review procedures for claims involving discrimination. The court does not address this issue because the court granted the voluntary dismissal of count I (the only claim asserting discrimination) supra.

July 28, 2003. Def.'s Mot. Ex. 2 at 1. The last page of the order clearly laid out instructions regarding further review rights through the Federal Circuit. *Id.* at 2. The plaintiff chose not to pursue that remedy and instead brought her claim here. But other than the plaintiff's mention of ERISA as a possible basis for jurisdiction—which the court has established it is not—she has not provided a germ of substantive authority from which jurisdiction could sprout.

For background purposes, President Carter's concerns over the increasingly inefficient and labored management and merit protection of the civil service system prompted him to propose legislation in 1978, that would restructure the civil service to strengthen employee rights, improve the efficiency and responsiveness of the federal government, and reduce the red-tape and costly delay in the then inefficient personnel system. *Frazier Jr. v. Merit Sys. Prot. Bd.*, 672 F.2d 150, 153–54 (D.C.Cir.1982) (citing H.R.Rep. No. 1403, 95th Con., 2d Sess. 2–3). Congress responded by enacting CSRA, "which replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto,* 484 U.S. 439, 445, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Congress, in enacting CSRA, saw it fit to strip the federal district courts of jurisdiction over MSPB appeals, including appeals involving disability retirement. 28 U.S.C. § 1295(9); 5 U.S.C. § 7703(b)(1). This court cannot provide judicial review otherwise because "the CSRA precludes resort to other statutory schemes for aggrieved federal employees raising non-constitutional claims against employers." *Sculimbrene v. Reno* 158 F.Supp.2d 1, 7 (quoting *Spagnolo I,* 809 F.2d 16, 30 (D.D.C.1986)). To allow the plaintiff judicial review outside the CRSA scheme would "afford her greater rights" than CSRA affords other employees in her same employee category. *See Graham* 358 F.3d at 935; *see also Carducci v. Regan,* 714 F.2d 171, 174 (D.C.Cir. 1983); *United States v. Fausto,* 484 U.S. 439, 451 at n. 3, 108 S.Ct. 668, 98 L.Ed.2d 830 (noting that employees who are given review rights cannot expand these rights by resort to pre-CSRA remedies).

 The court recognizes that "it is the comprehensiveness of the statutory scheme involved, not the adequacy of specific remedies thereunder, that counsels judicial abstention." *Spagnola v. Mathis,* 859 F.2d 223, 227 (D.C.Cir.1988) (internal quotations omitted). Simply put, CSRA's remedial scheme does not provide judicial review for the plaintiff's claim in this court, but rather, it precludes any relief in this court for the plaintiff. Accordingly, the court dismisses the plaintiff's claim for lack of subject matter jurisdiction because "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle [her] to relief." *Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C.Cir.1983) (quoting *Conley v. Gibson,* 355 U.S. 41, 45– 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

The court holds that the CSRA precludes this court's review of the plaintiff's claim that the defendant failed to properly calculate her pension credits for her disability retirement annuity under the Retirement Act. Neither ERISA nor CSRA provides this court with any basis for subject matter jurisdiction. Accordingly, the court grants the defendant's motion to dismiss count III for lack of subject matter jurisdiction.

### E. The Court Denies the Plaintiff's Motion for Summary Judgment as to Count III

The court, having dismissed count III with prejudice, does not reach the issue of

the pending motion for summary judgment on this count. The court concludes that this issue is moot and accordingly denies the plaintiff's motion for summary judgment as to count III.

## IV. Conclusion

For the foregoing reasons, the court grants the plaintiff's voluntary dismissal of count I without prejudice, contingent on the plaintiff's acceptance of stipulated conditions. The court further dismisses count II with prejudice by the request of both parties and grants the defendant's motion to dismiss count III. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 21st day of October 2004.